NOT FOR PUBLICATION

FILED
JEANNE A. NAUGHTON, CLERK
APR 30 2018
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY_____DEPUTY

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In re:

JOSEPH KAYATI, JR.,

    Debtor.

Case No. 15-24280 (JNP)

Chapter 13

## MEMORANDUM DECISION GRANTING, IN PART, MOTIONS TO QUASH SUBPOENAS

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

    Before the Court are two motions seeking to quash several subpoenas served by Joeseph Kayati, Jr. (the "Debtor"). The first motion was filed on behalf of Michael DiMeo, Jr.; Michael DiMeo, Sr.; Michelle DiMeo; and their state court attorney, Matthew McCrink (the "DiMeo Motion").[1] Dkt. No. 246. The second motion was filed on behalf of David Arena and William Donio (the "Donio Motion" and with the DiMeo Motion, the "Motions"). Dkt. No. 249. The Debtor has opposed both Motions. For the reasons discussed, the DiMeo Motion will be granted in part and the Donio Motion will be granted.

### Jurisdiction

    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of these Motions constitutes core proceedings under 28 U.S.C. § 157(b)(2)(A) and (L).

### Background

    The Debtor filed a Chapter 13 petition for relief under Title 11 of the United States Code (the "Code") on July 30, 2015. Michael DiMeo, Jr. and Michael DiMeo, Sr. filed a priority proof

---

[1] The DiMeo Motion is captioned as a cross-motion, which appears to be a mistake, as there is no motion to which the DiMeo Motion directly relates.

of claim (the "Claim") in the amount of $148,872.58 for "attorney fees for frivolous lawsuit." The Claim stems from state court litigation brought by the Debtor against Michael DiMeo Sr. and Jr. that is currently pending in the Superior Court of New Jersey, Atlantic County (the "State Court Action"), in which the DiMeos filed a counterclaim for attorney fees. The Debtor filed an objection to the Claim. Dkt. No. 30. The Court entered an order reclassifying the Claim as an unsecured contingent claim, but denying the Debtor's motion to disallow it, "without prejudice to renew the motion after the state court litigation concludes." Dkt. No. 64. The Court found that because the Claim was based on the State Court Action, the state court should determine whether the DiMeos are entitled to attorney fees under the facts of that case and applicable state law.

Despite that ruling, in September 2016 the Debtor filed a motion for an evidentiary hearing, to "challenge the bona fides of the [Claim]." Dkt. No. 103. On November 15, the Court issued an oral ruling denying that motion. The decision explained that a "claim" in bankruptcy is defined extremely broadly, and that the Claim set forth sufficient factual details to establish a "claim" under the Code. See, e.g., Johnson v. Home State Bank, 501 U.S. 78, 83 (1991). The Court reiterated that the Debtor's argument "was premature, the DiMeos intend to seek recovery of attorney's fees in state court, and their right to payment has not yet been decided, and they possess a 'claim' as it is defined by the bankruptcy code." Dkt. No. 103. The Court also stated that "if and when the state court determined that the DiMeos are allowed to recover attorney's fees, the Debtor may come back at that point to renew his objection to the claim." Dkt. No. 107.

Subsequently, a confirmation hearing on the Debtor's proposed Chapter 13 plan (the "Plan") was held on September 20, 2017 (the "September 20 Hearing"), at which all parties appeared. The DiMeos objected to the confirmation of the Plan arguing that the Plan unfairly discriminated against the DiMeos by separately classifying the Claim and proposing to pay it $0. Dkt. No. 217; Sept. 20 Hrg. at 12:30. Additionally, the Chapter 13 trustee (the "Trustee") argued

2

that the Plan was not feasible and the case should be dismissed because the Plan proposes to pay the Trustee any proceeds from the State Court Action, but the State Court Action is unlikely to be resolved in time for the Plan to be completed within five years as required by section 1322(d) of the Code. Id. at 12:32.

A month later, the Debtor filed a motion pursuant to 28 U.S.C. §§ 144 and 455 seeking my recusal from the case (the "Recusal Motion"). The Recusal Motion also improperly requested that I recuse Magistrate Judge Ann Marie Donio from the case. The Court denied the Recusal Motion. Dkt. Nos. 252 and 253.

## The Subpoenas

In December 2017, the Court issued subpoenas to the Debtor who served them upon: Mr. McCrink; Michael DiMeo, Jr.; Michael DiMeo, Sr.; Michele DiMeo, the guardian ad litem for Michael DiMeo, Sr.; William Donio; and David Arena (with William Donio, the "Donios"). The subpoenas required appearances by each individual at a hearing that was scheduled for January 11, 2018, but has been adjourned pending a ruling on these Motions. The subpoenas did not explain the issues upon which these parties would be called upon to testify.

At the time, there were two matters scheduled to be heard on January 11. The first was the Recusal Motion. The second was to consider confirmation of the Plan, and the Trustee's request to dismiss the case (the "Confirmation Hearing").

The DiMeo Motion argues that none of the subpoenaed parties has information relevant to confirmation of the Plan or whether the case should be dismissed. Additionally, the DiMeo Motion argues that any information the DiMeos have related to the Claim is limited to the bills received from Mr. McCrink, and that information was attached to the Claim. See Claim 1-1. Further, the DiMeo Motion argues that the subpoenas are unduly burdensome, and that the Debtor does not meet the burden to force counsel for an opposing party to testify. The Debtor filed a response (the

3

"Debtor's Response") that does not clarify the subject matter about which the Debtor seeks testimony, but instead submits arguments as to the validity of the Claim. The Court will not detail all the allegations in the Debtor's Response, but notes that a substantial portion is dedicated the DiMeos' alleged conduct in the State Court Action, and arguing the merits of the State Court Action.

The Donios, who are not parties to the State Court Action nor creditors in this case, argue that the subpoenas addressed to them should be quashed for several reasons, including that: (a) they are procedurally deficient because the fees and expenses of travel were not served with the subpoenas; (b) they were issued for an improper purpose and only to harass the Donios because the Donios have no information relevant to any pending matters that is not readily apparent; and (c) the only information related to these matters that could be obtained from the Donios is their relationship to Judge Donio. The Debtor filed a response (the "Debtor's Second Response") in which he objects to the lack of certifications by the Donios and states that it is necessary to question the Donios regarding their relation to Judge Donio,[2] and the Donios' knowledge of the facts related to the State Court Action. Finally, the Debtor alleges that this Court, the Trustee, and parties connected to the State Court Action have engaged in biased behavior to prevent him from successfully completing his bankruptcy.

### February 20 Hearing

At a hearing on February 20, 2018 (the "February 20 Hearing"), the Court asked the Debtor what information he believed the subpoenaed parties had that was relevant to confirmation of the Plan or dismissal of his case. Initially, the Debtor listed three separate matters upon which he intended to question the Donios.

The Debtor stated he intended to question the Donios regarding a "Grower's Agreement"

---

[2] This argument was addressed in the Recusal Opinion.

4

between the Donios and the DiMeos and the money being transferred on account of that agreement. "I still need information that [the Donios] hold, that potentially, has the information of millions of dollars, which [the Donios] . . . have access to, involving their relationship with [the DiMeos], . . . for millions of dollars." Feb. 20 Hrg. at 2:17. The Debtor stated that he also needed to question the Donios regarding the Claim. Id. at 2:22. The Court asked the Debtor whether this discovery was relevant to and suited for the State Court Action, the Debtor acknowledged that, but stated:

> It's discovery that should be taken in the state court as well, Your Honor. However, the portal that allows me the right to examine these individuals is this . . . invoice . . . that clearly states that I owe all these fees, and I have a right to ask these people if they were contacted, what the basis of this charge was.

Id. at 2:20. See also id. at 2:23-2:25. The Debtor continued by stating that his Plan cannot be confirmed because of the Claim, and he needs to question the Donios about the Claim. Id. The Court stated that those matters were before the state court, and again asked the Debtor what these subpoenaed parties were going to testify to that related to the confirmation of his Plan or dismissal of his case. The Debtor responded that:

> In reference to [the Donios], it was kind of them to offer the information, to justify or sustain, informally, that in fact [they] have a familial relationship with Magistrate Donio. Nevertheless, I have no certifications . . . it's hearsay. We're basing this on hearsay. . . So I really need some . . . clear evidence that in fact they are [related to Judge Donio]. And that may put it to bed.

Id. at 2:23. The Court pointed out that both the objection to Claim and the Recusal Motion had already been decided, and as such, discovery regarding either of those matters was no longer appropriate.

Finally, the Debtor indicated that he needed information from the DiMeos related to the State Court Action, because the alleged delays in the State Court Action are likely to cause his bankruptcy to be dismissed. Id. at 2:30 – 2:32.

5

## Law

Federal Rule of Civil Procedure 45, made applicable by Fed. R. Bankr. P. 9016, governs when a court may quash or modify a subpoena. CedarCrestone Inc. v. Affiliated Comput. Servs. LLC, 2014 WL 3055355, at *2 (M.D. Pa. July 3, 2014). A court should quash or modify a subpoena that "subjects a person to undue burden." Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas, 262 F.R.D. 293, 299 (S.D.N.Y. 2009) (quoting Fed. R. Civ. P. 45(c)(3)(A)(iv)).[3] Rule 45(d)(3) provides that:

> (A) On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>   (i) fails to allow a reasonable time to comply;
>   (ii) requires a person to comply beyond the geographical limits specified in Rule 45(d);
>   (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
>   (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A).

The party moving to quash a subpoena bears the burden of persuasion. Amazon.com, Inc. v. C.I.R., 108 T.C.M. (CCH) 588 at *3 (T.C. 2014) (citing Goodman v. United States, 369 F.2d 166, 169 (9th Cir.1966); Aristocrat, 262 F.R.D. at 299; Moon v. SCP Pool Corp., 232 F.R.D. 633, 636 (C.D. Cal. 2005)). To satisfy its burden, a moving party must go beyond mere allegations that the requests are overbroad, irrelevant, or burdensome. See Josephs v. Harris Corp., 677 F.2d 985, 992 (3d Cir. 1982).

When a subpoena is issued to compel a party to testify at trial, the proposed testimony must be relevant. See Amazon, 108 T.C.M. (CCH) 588 at *3; Aristocrat Leisure, 262 F.R.D. at 297. In Aristocrat Leisure, the court considered whether a trial subpoena should be quashed pursuant to Rule 45. 262 F.R.D. at 295. The court explained that the first step in this process involved

---

[3] Rule 45 was amended in 2013, such that subdivision (d) contains the provisions formerly in subdivision (c). See Fed. R. Civ. P. 45 advisory committee note to 2013 amendment.

assessing "whether the proposed testimony is relevant under Federal Rule of Evidence 401 and, even if relevant, whether such evidence is admissible pursuant to Federal Rule of Evidence 403." Id. at 297. In order to determine the relevancy of the proposed testimony, a court must first determine the scope of the issues for trial. Id. at 296. Thus, if a subpoena seeks testimony that is not relevant to the issues at trial, the court should quash that subpoena. See Amazon, 108 T.C.M. (CCH) 588 at *2 n.3 (citing Bane v. Commissioner, T.C. Memo.1971–31, 30 T.C.M. (CCH) 125, 128–129). "Relevance under Rule 26(b)(1) is construed more broadly for discovery than for trial." Plant Genetic Sys., N.V. v. Northrup King Co., 6 F. Supp. 2d 859, 861 (E.D. Mo. 1998) (citing Heat & Control, Inc. v. Hester Indus., Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986)).

> While the Federal Rules of Civil Procedure do not define 'relevant information,' the Federal Rules of Evidence define it as 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'

Robinson v. Quicken Loans, Inc., 2012 WL 6045836, at *2 (S.D. W. Va. Dec. 5, 2012) (quoting Boykin Anchor Co., Inc. v. Wong, 2011 WL 5599283 at *2 (E.D.N.C. November 17, 2011)). See also Fed. R. Evid. 401.

"Federal Rule of Evidence 402 states that relevant evidence is admissible unless the Constitution, a federal statute, the Federal Rules of Evidence, or rules prescribed by the Supreme Court provide otherwise." United States v. Finley, 2014 WL 4411071, at *2 (W.D. Pa. Sept. 5, 2014) (citing Fed. R. Evid. 402). Finally, FRE 403 creates additional exceptions to the general admissibility rule, stating "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Thus, FRE 403 mandates a balancing test, "requiring sensitivity on the part of the trial court to the subtleties of the particular situation." United States v. Vosburgh, 602 F.3d 512, 537 (3d Cir. 2010). As such, evidence must be relevant to be admissible, however,

relevant evidence may be excluded under FRE 402 or 403.

A trial court has broad authority over the management of trials before it, including the power to exclude cumulative testimony. In re Nicole Energy Servs., Inc., 385 B.R. 201, 224 (Bankr. S.D. Ohio 2008) (quoting Tran v. Toyota Motor Corp., 420 F.3d 1310, 1315 (11th Cir.2005) (affirming district court's order excluding testimony as cumulative)) (citing Bowman v. Corr. Corp. of America, 350 F.3d 537, 547 (6th Cir. 2003); Schneck v. Int'l Bus. Corp., 1996 WL 885789, at *24 (D.N.J. June 25, 1996). "Administration of both [FRE 401 and 403] is left primarily to the sound discretion of the trial judge." Aristocrat, 262 F.R.D.at 298 (citing United States v. Mangan, 575 F.2d 32, 45 (2d Cir. 1978)).

As such, if a witness has no new evidence to offer, it is proper for a court to exclude that witness to avoid wasting the court's time, or presenting needlessly cumulative or repetitious testimony. Schneck, 1996 WL 885789 at *24 (citing DiNizio v. Burzynski, 81 N.J.Super. 267, 274, 195 A.2d 470 (App. Div. 1963) (not error to exclude testimony otherwise relevant which is repetitious of testimony or matter already in evidence and thus merely repetitious)). Parties that do not have any relevant, non-privileged information, are entitled under the undue burden standard to the quashing of subpoena issued to him. Jones v. Hirschfeld, 219 F.R.D. 71, 77 (S.D.N.Y. 2003).

Finally, "the status of a witness as a non-party to the underlying litigation 'entitles [the witness] to consideration regarding expense and inconvenience.'" Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996).

### Subpoenaing Opposing Counsel

There is no per se rule against attorneys testifying at trial. However, the New Jersey Rules of Professional Conduct[4] provide that an attorney may not "act as advocate at a trial in which the

---

[4] An attorney appearing in the Bankruptcy Court for the District of New Jersey is bound by the New Jersey Rules of Professional Conduct. See D.N.J. LBR 9010-1(a).

lawyer is likely to be a necessary witness. . . ." N.J. Rules Prof'l Conduct r. 3.7. Thus an attorney called as a witness must not represent his client at trial. See In re Roper & Twardowsky, LLC, 566 B.R. 734, 747 (Bankr. D.N.J. 2017). Exceptions include when the testimony relates to an uncontested issue or the nature and value of legal services rendered in the case; or when disqualification of the lawyer would cause substantial hardship to the client. Id. at 749.

The Third Circuit has not adopted a test to determine when opposing counsel may be called as a witness. But in Johnston Dev. Grp., Inc. v. Carpenters Local Union No. 1578, 130 F.R.D. 348 (D.N.J. 1990), the court concluded that "the appropriate test is found in Fed. R. Civ. P. 26(c), requiring a demonstration of good cause to preclude or limit the testimony, with the burden on the party moving for protection." Fleming Steel Co. v. Jacobs Eng'g Grp., Inc., 2017 WL 6539309, at *2 (W.D. Pa. Dec. 21, 2017).

<u>11 U.S.C. §§ 1322 and 1325</u>

Section 1322(a) of the Code lists four requirements for confirmation of a plan. See 11 U.S.C. § 1322(a); In re Davis, 392 B.R. 132, 134 (Bankr. E.D. Pa. 2008). A plan shall:

> (1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan; (2) provide for the full payment, in deferred cash payments of claims entitled to full priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claims; and (3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

In re Szostek, 886 F.2d 1405, 1411 (3d Cir. 1989). The fourth requirement (which does not apply here) provides an exception to the full payment of priority claims in limited circumstances. See 11 U.S.C. § 1322(a)(4). "Section 1325(a) identifies nine additional confirmation provisions, including good faith, feasibility and the best interests of creditors test." Davis, 392 B.R. at 134 (citing In re Solomon, 67 F.3d 1128, 1132 (4th Cir. 1995)). Finally, section 1322(d) requires that any plan must be completed within three years, unless the court, for cause, approves a longer

9

period, not to exceed five years. See 11 U.S.C. § 1322(d).

Beyond these specific requirements, section 1322(b)(1) of the Code permits a Debtor's plan to separately classify unsecured claims, but forbids the plan from discrimination unfairly against any such class. 11 U.S.C. § 1322(b); In re Osorio, 522 B.R. 70, 76–77 (Bankr. D.N.J. 2014).

## Analysis

As discussed above, there are two objections to the Plan. The DiMeos argue that the Plan unfairly discriminates against the Claim, in violation of section 1322(b), by classifying it separately from the other general unsecured claims and proposing to pay nothing on account of the Claim. The Trustee argues that the Plan is not feasible because the State Court Action will not be concluded in time for the Debtor to make all payments under the Plan within five years, as required by section 1322(d). The Trustee further argues on this basis that the Debtor cannot propose a confirmable plan and therefore, the case must be dismissed.

As noted, only relevant evidence is admissible. Thus, any testimony the Debtor wishes to elicit must have a tendency to make it more or less likely that either: (1) the State Court Action will be resolved in time to allow the Plan to be completed within the five-year time frame, or (2) that the Plan does not discriminate unfairly against the Claim. Any testimony that does not meet those requirements is not relevant and therefore not admissible at the Confirmation Hearing.

## The Donio Motion

The Donios argue that they do not have any information relevant to confirmation of the Plan or dismissal of the case. At the February 20 Hearing, the Debtor stated that he had intended to ask the Donios about their relationship with Judge Donio in support of the Recusal Motion:

> Mr. Kayati: I filed a new set of subpoenas, now unfortunately the cart's been put after the horse [sic]. We're here today in part, in part, because of the information I needed in reference to the actual motion to disqualify (inaudible) just trying to clear the air and make sure that I'm not getting a clear . . . level playing field that's afforded to

10

me under the law and the rules.

Feb. 20 Hrg. at 2:17. The Debtor continued later:

> Mr. Kayati: In reference to [the Donios], it was kind of them to offer the information, to justify or sustain, informally, that in fact [they] have a familial relationship with Magistrate Donio. Nevertheless, I have no certifications . . . it's hearsay. We're basing this on hearsay. . . So I really need some . . . clear evidence that in fact they are [related to Judge Donio]. And that may put it to bed.

Id. at 2:23. The Recusal Motion has already been ruled upon.[5] The Donios' relationship to Judge Donio was not relevant to the Recsual Motion because Judge Donio has no involvement in the Debtor's bankruptcy case. See Dkt. No. 252 at 17-18. Moreover, the relationship of the Donios to Judge Donio is decidedly not relevant to confirmation of the Plan or whether the case should be dismissed.

Similarly, any information regarding the validity or amount of the Claim is relevant only to the State Court Action, as this Court has already ruled that the Claim is an allowed contingent and disputed claim, subject to determination in the State Court Action. Nevertheless, the Debtor's stated purpose of having the Donios testify at the Confirmation Hearing is that they "are listed throughout this invoice that Mr. McCrink submitted, as his proof of claim in my bankruptcy. This proof of claim, is now . . . the nucleus of why my bankruptcy may be potentially dismissed, because now they come up with all these different excuses." Feb. 20 Hrg. at 2:26. Discussions between the Donios and Mr. McCrink may be relevant to a review of the fees the DiMeos seek to recover, but that is an issue to be decided in the State Court Action. The DiMeos' request for fees is an issue in the State Court Action and discovery related to the amount of the fees and whether they should be awarded is properly addressed by the state court.

The final reason the Debtor gave for subpoenaing the Donios to testify is related to the Grower's Agreement: "I wanted to ask them about the . . . transparency issues that I have between

---

[5] The parties consented to the Court ruling upon the Recusal Motion without a hearing.

11

[the Donios] and [the DiMeos], with all these grower's agreements." Id. at 2:25. But the Debtor has not suggested any fact related to the Grower's Agreement that would make it more or less likely that the Plan does not unfairly discriminate against the Claim, nor that the State Court Action will reach a final determination in time to allow the Debtor to complete the Plan within the five years.

In sum, any discovery the Debtor believes is necessary for the prosecution or defense of issues in the State Court Action is properly addressed to the state court, and not presented to this Court in an attempt to circumvent the state court. None of the subject areas of questioning the Debtor listed fall within the scope of issues for determination at the Confirmation Hearing. Specifically, none of these questions are relevant - the information the Debtor seeks to elicit from the Donios does not make it more or less likely that the Court will find the Plan unfairly discriminates against the Claim, nor whether the State Court Action would be resolved within the five-year limit. Therefore, none of the information the Debtor proposes to obtain is admissible.

Further, as the Donios are not parties to this case, even if there was some relevant information the Debtor may glean from their testimony, the minimal probative value of that information is outweighed by the burden of requiring the Donios to miss work, travel to Court, and potentially pay counsel to attend the hearing. In balancing the little, if any, relevant information the Debtor might obtain from the Donios against the burden to the Donios if they were forced to appear, the Court finds there are grounds under Rule 45 to quash the subpoenas issued to the Donios. See Concord, 169 F.R.D. at 49. As such, the Court will grant the Donio Motion, and quash the subpoenas issued by the Debtor to William Donio and David Arena.

DiMeo Motion

The DiMeos argue there is no relevant information they might provide at the Confirmation Hearing. The Debtor's Response does not identify any relevant testimony he hopes to obtain from

12

the witnesses, but instead argues that the Claim is false, and that the DiMeos have intentionally obstructed discovery in the State Court Action.

Indeed, when the Court asked the Debtor at the February 20 Hearing what testimony he hoped to obtain, the Debtor responded that he needed information and transparency regarding the Growers' Agreement:

> Mr. Kayati: If that information does provide me the evidence that I need, to show, that in fact there is no transparency, and I can get transparency where all this money's going, Michelle DiMeo has access to that information, she is the supposed guardian ad litem, Mike [DiMeo] Jr. would have that information, [the Donios] would have that information, they are involved in a grower's agreement with Mike [DiMeo] Senior, who has a guardianship, which wasn't procedurally done correctly.
>
> Court: Aren't these all issues going on before the state court? This sounds to me like a lot of the stuff that I keep hearing is going on in the state court.
>
> Mr. Kayati: It is Your Honor, and I know that this court doesn't like it when I bring up state court issues, however, the crux of where I'm at right now, is the state court issues with Mr. Hahn and his false claim priority status that's been tailored down to a secured claim with a run on, revolving line of creditors credit that's . . . its addum finidum, [sic] until we come up with a final number.

Feb. 20 Hrg. at 2:18. The Court has already ruled on the Debtor's objection to the Claim, and as such no further testimony is necessary on this issue in the bankruptcy case. These are issues in the State Court Action, and as such, subject to the state court's management. The Court explained this to the Debtor during the February 20 Hearing:

> Court: What do you intend to have them testify to that's going to relate to . . . confirmation of your plan or dismissal?
>
> \* \* \*
>
> Mr. Kayati: I wanted to ask them the legitimacy of their claim that they have put against my bankruptcy. That's causing me almost guaranteed dismissal from the last hearing . . . if not I'll be surely shocked. Nevertheless, I believe I have a right to question them about . . . . any claim . . . don't I have a right to question their legitimacy?

13

> Court: You certainly have the right to look into claims and file objections to claims. However, you've already filed an objection to this claim; and I've already said that I think it's the state court that needs to make the determination.

Id. at 2:32. Despite this, the Debtor repeatedly stated that he wanted to "ask him questions about this invoice, that I'm ultimately going to suffer from if I'm not successful in the state litigation." Id. at 2:27. Similarly, the Debtor failed to describe how any information related to the Grower's Agreement between the Donios and the DiMeos is relevant to whether his Plan should be confirmed or whether his case should be dismissed.

Lastly, the Court notes its concern with the Debtor hoping to use the Confirmation Hearing as a tool to obtain testimony and evidence that he has allegedly been unable to obtain in the State Court Action. One exchange in particular is telling, in which the Court asked about the DiMeos testimony, the Debtor stated: "I'm trying to get discovery, again, they are tolling it, I'm not getting it. So I wanted to ask them the legitimacy of their claim that they have put against my bankruptcy." Id. at 2:32. While the outcome of the State Court Action may impact the Debtor's bankruptcy, this is not the forum through which the Debtor can seek to correct any perceived injustice or alleged improper conduct that occurs in the State Court Action - he must proceed within the state court system to address any issues with the procedure or conduct that occurs in that action, as this Court does not sit in appellate review of the state court.

None of the testimony the Debtor has stated he seeks to elicit from the subpoenaed parties appears to be relevant to the Confirmation Hearing as none of this would tend to make a fact of consequence more or less likely.

However, on several occasions during the February 20 Hearing the Debtor noted that his bankruptcy case may be dismissed because the State Court Action will extend beyond the five-year time frame within which his Plan must be completed. Id. at 2:26. Therefore, the Court will not foreclose the Debtor from attempting to obtain relevant testimony simply because the Debtor

did not fully articulate the testimony he seeks. Testimony related to the probable length of time before the State Court Action is concluded could be relevant to whether this case should be dismissed. As a result, the Court will consider whether the burden on the DiMeos and Mr. McCrink is so great as to warrant quashing the subpoenas.

Beginning with Mr. McCrink, in determining whether modifying or quashing is appropriate, the Court must weigh (1) the burden upon the subpoenaed party against (2) the value of the information to the serving party. Amazon, 108 T.C.M. (CCH) 588 at *3. "Factors to be considered include the relevance of the information sought, the serving party's need for that information, the breadth of the request, the time period covered by the subpoena, the particularity of the request, and the burden imposed." Id.

The DiMeos have established that the subpoena of Mr. McCrink should be quashed. The Debtor's request does not establish a need for the information that outweighs the burden on the subpoenaed party. For example, in Younes v. 7-Eleven, Inc., the court found that "deposing defendant's counsel would be unduly oppressive at this juncture." 2015 WL 12843884, at *4 (D.N.J. 2015). The court found this based on the likely harm to the client of the deposed attorney, the likely cost of litigation involved with deposing the attorney, and that other parties with the same relevant knowledge were available to be deposed avoiding the harm altogether. Id. In this case, although Mr. McCrink may have some potentially relevant information related to how long the State Court Action may continue, this would be an opinion based upon his legal expertise. The Debtor failed to identify any other nonprivileged, relevant information Mr. McCrink may have to offer the Court through his testimony. An opinion on this issue could be obtained through the examination of another attorney without imposing a hardship on the DiMeos or Mr. McCrink. Further, any additional insight Mr. McCrink may have related to strategy or planned action within this case or the State Court Action specifically is likely privileged. Thus, the Debtor's need is

limited. On the other hand, requiring Mr. McCrink to testify, and thus potentially barring him from representing the DiMeos in the State Court Action, would impose an undue burden on the DiMeos. Given the relative availability of the relevant information Mr. McCrink may have, and its minimal value to the Debtor, the Court finds the Debtor's need to examine Mr. McCrink is heavily outweighed by the damage this would do to the DiMeos, because if Mr. McCrink were to testify he may be barred from representing the DiMeos in the State Court Action.[6] Thus, the Court will quash the subpoena addressed to Mr. McCrink.

Regarding the DiMeos, the Court will proceed as follows. Each of the DiMeos may indeed have relevant, non-privileged information on the issue of how long the State Court Action may extend before resolution, however, the Court expects that each of the DiMeos is likely to have very similar, if not the same, information. As such, compelling each of them to testify would likely be cumulative, cause undue delay, and, therefore, under Federal Rule of Evidence 403, be subject to exclusion. The Court therefore will exercise its discretion to permit the Debtor to examine one of the DiMeos, whichever the Debtor believes will be the best source of relevant information. Following the examination, the DiMeos may renew their motion to quash the subpoenas served upon the remaining DiMeos and the Debtor may be required to show this Court what relevant information he believes he will to obtain from the remaining witnesses that he was unable to obtain from his examined witness. See Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008) (A trial court is afforded broad discretion on evidentiary rulings "particularly with respect to Rule 403.").

## Conclusion

As there is no relevant information that the Donios could provide to the matters before the Court at the Confirmation Hearing, the Court will grant the Donio Motion to quash. Similarly, the

---

[6] Forcing Mr. McCrink to testify could actually harm the Debtor because of the additional delay that would be inherent in retaining replacement counsel midway through litigation.

16

Court will grant the DiMeo Motion insofar as quashing the subpoena served upon Mr. McCrink. However, the Court will reserve its decision on the DiMeo Motion, denying it to the extent necessary to permit the Debtor to call and question a single witness of his choosing. The DiMeos may renew the DiMeo Motion after the initial witness has completed his or her testimony.

Dated:  April 30, 2018

                                          JERROLD N. POSLUSNY, JR.
                                          U.S. BANKRUPTCY COURT JUDGE